```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF MISSISSIPPI
                         JACKSON DIVISION
```

JIM PATTON                                              PLAINTIFF

VS.                              CIVIL ACTION NO. 3:09CV797TSL-FKB

COCA-COLA ENTERPRISES INC.                              DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendant Coca-Cola Enterprises, Inc., pursuant to 9 U.S.C. § 4, to compel arbitration, and to dismiss or, in the alternative, to stay pending arbitration. Plaintiff Jim Patton has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes the motion should be denied.

Upon the termination of his employment with defendant Coca-Cola Enterprises, Inc. (CCE), plaintiff Jim Patton filed a charge of age discrimination with the Equal Employment Opportunity Commission, and, following receipt of a notice of right to sue, he filed the present action alleging violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 *et seq.*, and asserting various state law claims, including for negligence, gross negligence, wrongful termination, tortious breach of contract and negligent and/or intentional infliction of emotional

distress.[1]  In the present motion, CCE contends that Patton's claims against it are subject to a binding arbitration agreement implemented by CCE in 2004 as part of its "Solutions" Program for resolution of employee disputes.

The first question to be determined by a court deciding a motion to compel arbitration is whether the parties agreed to arbitrate the dispute in question.  Am. Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 537 (5th Cir. 2003).  In answering this question, the court must determine "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."  Id.  In determining whether there is a valid arbitration agreement between the parties, the court looks to the state law that ordinarily governs the formation of contracts. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995).  Under Mississippi law, a valid agreement must have the "mutual assent" of the parties. See Byrd v. Simmons, 5 So. 3d 384, 388 (Miss. 2009) ("[a] valid contract must have (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract

---

[1] Plaintiff filed his complaint in the Circuit Court of Hinds County, but the case was timely removed on the basis of federal question jurisdiction.

formation"). Indeed, "it is axiomatic that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" Lang, 321 F.3d at 537 (citations omitted). See also Volt Infor. Scis. v. Bd. of Trs., 489 U.S. 468, 478-79, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989) (quoted in Lang) (stating that "[a]rbitration under the [FAA] is a matter of consent, not coercion," and "the FAA does not require parties to arbitrate when they have not agreed to do so").

Here, CCE acknowledges that plaintiff never signed an arbitration agreement; but it points out that such proof is not required to establish an enforceable arbitration agreement, as a party may manifest his acceptance of a proposed arbitration agreement by his conduct, e.g., by his continued employment. See May v. Higbee Co., 372 F.3d 757, 764 (5th Cir. 2004)(holding that continued employment can constitute assent to arbitration agreement under Mississippi law). CCE herein has undertaken to establish that plaintiff manifested his assent to the CCE's arbitration policy by continuing his employment with CCE after having been fully informed as to the terms of the company's arbitration policy (including the fact that it applied to *all* CCE employees), and having been likewise fully informed that his continued employment would signal his consent to be bound by that policy. CCE explains in its motion that, effective October 15,

3

2004, during plaintiff's employment with CCE, the company implemented a conflict resolution program called "Solutions," which requires binding arbitration of all disputes between CCE and its employees.  CCE asserts that all employees, including plaintiff, were informed of the specifics of the Solutions Program through various means, including an announcement letter mailed to each employee's home address, and through orientation seminars in which the Program was described orally, by video presentation and in a Solutions Program plan document distributed to all attendees. CCE asserts that through these myriad presentations and documents, all its employees were fully informed of the Solutions Program's mandatory arbitration requirement, and they were also informed that if they chose to continue their employment with CCE after the October 15, 2004 implementation date of the Solutions Program, they would be agreeing to become bound by the Program and thus required to arbitrate any employment-related disputes against CCE. CCE concludes that, by continuing his employment with CCE for more than three years after the Solutions Program implementation date, plaintiff entered into an enforceable agreement to arbitrate which covers all the claims he has asserted in this case.

For his part, Patton maintains that he cannot be compelled to arbitrate his claims against CCE because he never agreed that he would do so.  In his affidavit filed in response to CCE's motion, Patton states that while he was employed by CCE, he never attended

any orientation session or seminar regarding the Solutions Program; never viewed or saw a copy of any PowerPoint presentation about the Solutions Program; never viewed any video presentation relative to the Solutions Program; never received any Solutions Program announcement letter, or any other letter relative to the Solutions Program; never saw any brochure, plan summary, or any Solutions Program document, including any document purporting to answer "frequently asked questions"; and simply was never informed, orally, in writing, or by video or presentation, that by continuing in his employment with CCE, he would be agreeing to resolve workplace issues using the Solutions Program. Plaintiff further explains in his affidavit that while employed by CCE, he became aware there was a program called "Solutions" because he heard his supervisor Robert Remmel mention it on at least one occasion; but he states that Remmel told him the program applied only to hourly employees, and that it did not apply to salaried or management employees like Remmel and plaintiff. Plaintiff has also presented an affidavit from Remmel, in which he states that it is his understanding that the Solutions Program did not apply to salaried and management employees, such as plaintiff, and further confirms that he told plaintiff on more than one occasion that the Solutions Program did not apply to him. Plaintiff asserts that because he was told the program did not apply to him, he never made an effort to find out anything about the program.

Thus, all he ever knew or understood about the Solutions Program was that it did not apply to him.

CCE's rebuttal submission includes proof that Remmel attended an orientation session on the Solutions Program which was held in New Orleans for the company's managers. CCE argues that after attending this orientation session and reviewing the Solutions materials provided to him, Remmel could not reasonably have believed that the Program did not apply to managers and supervisors, since the materials clearly stated that the Program applied to "all employees." However, regardless of whether there may be an issue as to what Remmel believed, or could have reasonably believed, the fact is, CCE has offered no evidence to dispute plaintiff's and Remmel's sworn statements that Remmel told plaintiff the Solutions Program did not apply to him.

In light of plaintiff's evidence, CCE cannot prevail on its motion to compel arbitration. The burden is on CCE to affirmatively establish that plaintiff manifested his agreement to be bound by the Solutions Program by continuing in his employment with the company when he knew the terms of the Program and knew that by continuing in his employment with the company, he was agreeing to be bound by the terms of the Program. The record evidence establishes that plaintiff, in fact, was completely unaware that the Program applied to him, owing to the fact that his supervisor specifically told him that it did not apply to him.

6

Under the circumstances, the fact that plaintiff remained in CCE's employment cannot be interpreted as a manifestation of assent to the arbitration requirement of the Solutions Program.[2] That is, there can be no legitimate finding of mutual assent under these facts, and without mutual assent, there can be no enforceable arbitration agreement. See Byrd, 5 So. 3d at 388.

Accordingly, it is ordered that CCE's motion to compel arbitration is denied.

SO ORDERED this 7th day of May, 2010.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[2] As plaintiff notes, this case is distinguishable from other cases cited by CCE in which the employees were made aware of the Solutions Program and of its applicability to them, and continued working in the employ of CCE with such knowledge. See Simpson v. Jackson Coca-Cola Bottling Co., No. 3:05-cv-677-WHB-AGN (S.D. Miss. Dec. 16, 2005), and Lee v. Coca-Cola Enterprises Inc., No. 5:07-cv-1425-DEW-MLH (W.D. La. April 3, 2008). Here, there is affirmative evidence that the proponent of the arbitration agreement itself, through its manager, Remmel, informed Patton that it did not apply.

7